Opinion issued June 28, 2007







 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00264-CR

NO. 01-06-00265-CR






JOHN LEE MOORE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court 

Harris County, Texas

Trial Court Cause Nos. 1019524 & 1019525






O P I N I O N


 Following a joint jury trial on two separate indictments, a jury found appellant,
John Lee Moore, guilty of two aggravated sexual assaults of I.J. (1) Appellant pleaded
"true" to the enhancement allegations in the indictments, and the trial court sentenced
appellant to 20 years in prison for each offense, to run concurrently. 

 Challenging each conviction, appellant raises five identical issues in each
appeal. In his first two issues, appellant contends that the trial court erred by
admitting outcry testimony without conducting a hearing on the reliability of the
testimony and by permitting the State "to argue to the jury evidence which was not
introduced at trial." In his third through fifth issues, appellant challenges the
admission of his videotaped and written statements.

 We affirm both judgments.

Background


 In the summer of 2003, twelve-year-old I.J. would visit her aunt's house to play
with her two cousins. Appellant, who was the aunt's boyfriend, also lived in the
house. During one of these visits, I.J. and her cousins were playing outside. When
I.J. went inside to the bathroom, appellant entered the bathroom, grabbed I.J., and
took her to his bedroom. There, appellant penetrated I.J.'s vagina with his finger and
then his penis. A couple of days later, I.J. returned to her aunt's house to play with
her cousins. This time, appellant sexually assaulted I.J. in the bathroom by inserting
his finger into her vagina. 

 After the assaults, I.J. began experiencing behavior problems and was placed
on juvenile probation for six months. As part of her probation conditions, I.J.
attended therapy. After two months of therapy, I.J. broke down and told her therapist
about the two instances of sexual abuse by appellant. The therapist reported the
matter to authorities by calling a state 800 number designated for reporting child
abuse. 

 Appellant was charged, in two separate indictments, with aggravated sexual
assault. The jury found appellant guilty as charged in the indictments. These appeals
followed.

 Outcry Testimony


 In his first issue, appellant contends that "the trial court erred in admitting
outcry testimony without conducting a hearing on the reliability of the statements." 
Specifically, appellant complains of the testimony of I.J.'s therapist, Elizabeth
Murillo, and of the testimony of I.J.'s mother.

Testimony of Elizabeth Murillo

 At trial, I.J.'s therapist, Elizabeth Murillo, testified that I.J. had revealed,
during their counseling sessions, that appellant had sexually abused I.J. by
penetrating her vaginally with his finger and his penis. Murillo testified that I.J. told
her that the abuse had occurred over a two-to three-month period. 

 Before Murillo testified regarding what I.J. had told her about the abuse, the
defense objected to Murillo's testimony on the basis of hearsay and requested the trial
court to conduct a hearing to determine the reliability of Murillo's testimony pursuant
to Code of Criminal Procedure article 38.072. The trial court denied the objection
and request for the hearing.

 Code of Criminal Procedure article 38.072 provides a limited exception to the
preclusion of hearsay evidence. Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon
Supp. 2006). The statute defines outcry statements as the victim's statements made
to the first person, other than the defendant, 18 years of age or older, which describe
the alleged offense. Id. § (2)(a). Article 38.072 applies only to certain offenses,
including indecency with a child and other sexual offenses under Penal Code chapter
21, when the offense is committed against a child 12 years of age or younger. Id. § 1. 
The statute further requires that "the trial court finds, in a hearing conducted outside
the presence of the jury, that the statement is reliable based on time, content, and
circumstances of the statement." Id. § 2(b)(2).

 The provisions of article 38.072 are mandatory and must be followed for the
outcry statement to be admissible over a hearsay objection. See Duncan v. State, 95
S.W.3d 669, 671 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). The trial court
commits error if it overrules the hearsay objection without conducting a hearing. See
Long v. State, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990). 

 As conceded by the State, here the trial court abused its discretion when it
overruled the defense's hearsay objection and admitted Murillo's testimony without
first conducting an article 38.072 hearing. See id. Thus, we must now consider
whether appellant was harmed by the admission of Murillo's testimony. See Duncan,
95 S.W.3d at 671. 

 Because such error is non-constitutional in nature, we apply the harm analysis
set forth in Rule 44.2(b). See Duncan, 95 S.W.3d at 672; see also Tex. R. App. P.
44.2(b). Non-constitutional error must be disregarded unless it affects substantial
rights of the defendant. Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). 
A substantial right is affected when the error had a substantial and injurious effect or
influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997); Duncan, 95 S.W.3d at 672. A conviction should not be overturned
for such error if this Court, after examining the record as a whole, has fair assurance
that the error did not influence the jury, or had but a slight effect. Duncan, 95 S.W.3d
at 672 (citing Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). 
Likewise, improper admission of evidence is not reversible error if the same or
similar evidence is admitted without objection at another point in the trial. Leday v.
State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); see Duncan, 95 S.W.3d at 672
(holding improper admission of outcry testimony was harmless error because similar
testimony was admitted through complainant, pediatrician, and medical records). 

 At trial, I.J. testified, without objection, that appellant had penetrated her
vagina with his finger and then his penis. I.J. also testified that, a couple of days
later, appellant again penetrated her vagina with his finger. I.J.'s testimony at trial
was more detailed than that of Murillo regarding the specifics of the sexual contact
and the events surrounding the contact. In addition, another of the State's witnesses,
a forensic nurse who examined I.J., testified without objection that I.J. reported to her
that appellant had "pulled her inside the bathroom, pulled down her pants, inserted
his penis, and then let her go." 

 The State also introduced the testimony of John Schwartz, a forensic
interviewer, who met with appellant. Schwartz testified that he was alarmed by a
statement made by appellant toward the end of the interview. Specifically, appellant
had spontaneously remarked that I.J.'s "bush is tighter than my wife's." When
Schwartz asked appellant how he knew that, he responded, "She put my hand on it." 

 The State did not emphasize Murillo's testimony regarding I.J.'s statements to
her, but instead focused on I.J.'s testimony at trial, on evidence that I.J. is
intellectually and emotionally immature for her age, on the statement made by
appellant to Schwartz, and on appellant's partial confession given to an investigative
Child and Protective Services ("CPS") caseworker and to the police. Lastly, nothing
in the record indicates that the defense was surprised by Murillo's testimony. The
State's outcry notice was sent to the defense seven months before trial and indicated
that Murillo would testify that I.J. had told them about appellant's sexual abuse. 

 In support of his claim that his substantial rights were affected by the trial
court's failure to conduct an article 38.072 hearing, appellant contrasts Murillo's
testimony that I.J. told her that the abuse occurred over a two-to three-month period
with I.J's testimony that there were two instances of abuse only a couple of days
apart. Appellant also points to testimony of a private investigator hired by the
defense who testified that I.J. had denied that appellant penetrated her with his penis. 
Appellant contends that I.J.'s testimony regarding certain factual details surrounding
the abuse differed on direct examination and cross-examination.

 We do not agree that any inconsistencies in I.J.'s statements support a
conclusion that admitting Murillo's testimony without an article 38.072 hearing was
harmful. Instead, if anything, any inconsistencies between what I.J. told the jury, the
private investigator, and Murillo would serve only to undermine I.J.'s credibility, not
to bolster it.

 After examining the record as a whole, we conclude that appellant's substantial
rights were not affected by the trial court's error of failing to conduct an article
38.072 hearing to determine Murillo's reliability. Thus, we hold that the error was
harmless. See Tex. R. App. P. 44.2(b).

Testimony of I.J.'s Mother

 At trial, the State asked I.J.'s mother if I.J. had told her anything about the
abuse by appellant. The defense objected that such testimony would be hearsay and
would "call[] for outcry witness testimony." The trial court denied the objection and
admitted the testimony without holding an article 38.072 hearing. In response to the
State's question, I.J.'s mother testified that I.J. told her that appellant "tried to feel on
me." 

 The State concedes that the trial court's failure to hold the hearing was error. 
See Long, 800 S.W.2dat 548 (holding that defense's hearsay objection to outcry
witness's testimony served to apprise trial court that counsel was objecting to witness
testifying before article 38.072 hearing had been conducted). Thus, we must now
consider whether appellant was harmed by the admission of the testimony of I.J.'s
mother on this issue. See Duncan, 95 S.W.3d at 671. 

 After reviewing the entire record, we conclude that the trial court's error did
not affect appellant's substantial rights. Given the lack of detail, the complained-of
testimony added little to the evidence before the jury. The testimony was vague and
did not directly relate to the allegations supporting either charge against appellant. 
The record also shows that the State did not rely on the testimony in closing argument
and that the defense was given ample notice by the State that the testimony would be
offered. 

 Appellant contends that the admission of the testimony was harmful because 
I.J.'s testimony at trial was inconsistent with her mother's testimony. At trial, I.J.
testified that appellant hit her once on the "butt" as she walked through the kitchen,
while her mother testified that I.J. told her that he "tried to feel her up." 

 We do not agree that the difference in the testimony shows harm. The
testimony is not necessarily inconsistent. It is unclear whether the reference to
appellant's "feeling I.J. up" relates to appellant's hitting I.J. on the bottom. Even
assuming that it does, any discrepancy in what I.J. told her mother and what she told
the jury would likely serve to undermine I.J.'s credibility and would not have affected
appellant's substantial rights.

 We overrule appellant's first issue in each appellate cause number.

Improper Jury Argument


 In his second issue, appellant contends that "the trial court erred in permitting
the State to argue to the jury evidence which was not introduced at trial." As
correctly pointed out by appellant, permissible jury argument generally falls into one
of four areas: (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law
enforcement. Cannady v. State, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). 

 At issue in this case is the following portion of the State's closing argument:

 The first thing that [I.J.] did when this investigation started, and the first
thing any child does in these kind of cases, is a forensic interview at the
Children's Assessment Center. It's on video, it's in our files. As I told
you on voir dire, those--that video does not come--


 [Defense counsel]: Objection to eluding that that's not in evidence,
Judge, the video interview of the child. It's improper, Judge. 


 THE COURT: Overruled.


 [Prosecutor]: That video does not come into evidence unless for a prior
inconsistent statement. You did not see that video for a reason, because
she is consistent. Everything she said on the stand yesterday is what she
said back two years ago. It has not changed. She's continuously
consistent, but start using big words or talk real fast, she gets confused. 
Don't hold that against her.

 On appeal, appellant complains that the State made reference to content of 
I.J.'s videotaped forensic interview "to bolster its case" when the videotape was not
admitted into evidence. Appellant emphasizes that the State's argument "injected
new and harmful facts before the jury by arguing facts outside the record" and was
highly prejudicial. 

 An objection raised on appeal will not be considered if it varies from the
objection made at trial. Coffey v. State, 796 S.W.2d 175, 179 (Tex. Crim. App. 1990). 
At trial, appellant objected only to the State's reference to the videotape not being
admitted. Appellant made no objection to the State's later reference to the content of
the videotape to support its argument that I.J.'s statements regarding the abuse have
always been consistent. Thus, appellant has not preserved this complaint for our
review. See id. (holding appellant's complaint regarding State's closing argument not
preserved because it did not comport with objection made in trial court). (2)

 We overrule appellant's second issue in each appellate cause number.

Necessity of CPS Worker Informing Appellant of His Rights


 In his third issue, appellant contends that "the trial court erred in admitting
appellant's videotaped statements given to [an investigative caseworker] without first
giving appellant his Miranda warnings." 

A. Relevant Background Facts

 After I.J.'s therapist reported the abuse to the CPS child-abuse hotline in
Austin, a report was generated to the field CPS office in Houston and to the Houston
Police Department. CPS investigative caseworker Yolanda Alpough received the
referral for the case in November 2003. Because Alpough had difficulty locating her,
I.J. was not interviewed by CPS until January 22, 2004. During the forensic
interview, I.J. stated that appellant had sexually abused her. 

 Alpough also received a second, separate referral on appellant and his family
providing that appellant's own children might be at risk for abuse because appellant
had been accused of abusing I.J. Based on the second referral, Alpough picked up
appellant's twelve-year-old daughter from school on February 20, 2004 and brought
her to the Children's Assessment Center ("the CAC"). Alpough contacted appellant
and his common law wife, Annette Jackson, to tell them that she had a CPS referral
on the family and that she had picked up their daughter from school. Alpough
requested that appellant and Jackson come to the CAC. Alpough also instructed
Jackson to bring the couple's six-year-old son with her. 

 Alpough first interviewed appellant's children. Alpough then interviewed
appellant while his two children and Jackson waited in another part of the CAC. 
During the interview, which was videotaped, appellant admitted to sexual contact
with I.J. on two separate occasions. 

 Alpough immediately told Houston Police Department officer, M. Stevens,
who offices at the CAC, about the admission. Before speaking with him, Officer
Stevens informed appellant of his rights, which he waived. The interview with
Officer Stevens was also videotaped. Appellant again admitted to sexual contact with
I.J. In conjunction with speaking to Officer Stevens, appellant signed a written
statement in which he admitted that he touched and "fondled" I.J. "between her legs"
on two separate occasions.

 Appellant was not arrested at that time and left the CAC. Before leaving,
appellant and Jackson signed a CPS "safety plan," requiring appellant not to have
contact with his children. 

 After being charged in two indictments with aggravated sexual assault,
Appellant filed a motion to suppress the two videotaped statements and his written
statement. Appellant complained that he received none of his statutory or
constitutionally required warnings before making his oral statements to Alpough.
Appellant asserted that Alpough was an agent of law enforcement and was thus
required to warn him in compliance with Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966) and to follow the procedural requirements of Code of Criminal
Procedure article 38.22. The trial court denied appellant's motion to suppress. When
the State offered the videotaped statements and the written statement into evidence
at trial, appellant again objected. The trial court overruled the objection, and the
videotapes and the written statement were admitted into evidence.

 On appeal, appellant contends that Alpough's interview with him was
"explicitly or implicitly conducted on behalf of the police for the primary purpose of
gathering evidence or statements to used in a later criminal proceeding against
Appellant." That is, appellant contends that Alpough was a state agent and was thus
required to advise him of his rights in compliance with Miranda and to follow the
procedural requirements of article 38.22. Because it is undisputed that Alpough gave
no warnings to appellant before the interview, appellant asserts that the trial court
erred by admitting the videotaped and written statements into evidence. 

B. Standard of Review

 We review the trial court's decision to admit the appellant's statements under
an abuse of discretion standard. See Berry v. State, No. AP-74,913, 2007 WL
1489797, at *6 (Tex. Crim. App. May 23, 2007); Wilkerson v. State, 173 S.W.3d 521,
533 (Tex. Crim. App. 2005). Thus, in this case, we determine whether an implicit
conclusion by the trial court that CPS investigative caseworker, Alpough, was not an
agent of law enforcement was within the zone of reasonable disagreement. See
Wilkerson, 173 S.W.3d at 533.

C. Analysis

 In Wilkerson v.State, the Court of Criminal Appeals determined the same issue
before us: Whether a trial court had abused its discretion by admitting the statements
of a defendant obtained by a CPS caseworker, when the CPS caseworker had not
informed appellant of his Miranda rights or complied with article 38.22. 173 S.W.3d
at 527-33. In determining this issue, the court concluded that the principal inquiry
is: "Was this custodial interview conducted (explicitly or implicitly) on behalf of the
police for the primary purpose of gathering evidence or statements to be used in a
later criminal proceeding against the interviewee?" Id. at 531.

 At the outset, the Court of Criminal Appeals recognized,

 For the most part, CPS caseworkers, who are investigating family
placement and safety matters, and police officers, who are investigating
criminal matters, run on separate parallel paths. Both are interested in
gathering information. While police are collecting information for an
arrest and criminal prosecution, CPS workers are investigating to find
safe housing and protection for abused or neglected children. When a
state-agency employee is working on a path parallel to, yet separate
from, the police, Miranda warnings are not required.

Id. at 529. But, as explained in Wilkerson, "if the once-parallel paths of CPS and the
police converge, and police and state agent are investigating a criminal offense in
tandem, Miranda warnings and compliance with article 38.22 may be necessary." Id.
This is because, "[a]t this point, a CPS worker may be viewed as an agent of the
police." Id. 

 The Wilkerson court directed courts to evaluate whether "the two paths, that
of the police and that of CPS, are parallel or whether they have converged in a
particular case" by reviewing the entire record. Id. at 530. A court should examine
"the actions and perceptions of the parties involved: the police, the CPS caseworker
(or other potential agent of the police), and the defendant himself." Id. In so doing,
the Wilkerson court instructed courts to (1) look for information about the
relationship between the police and the potential police agent; (2) examine the record
concerning the interviewer's actions and perceptions; and (3) consider evidence in
the record of the defendant's perceptions of the encounter. Id. To aid in this analysis,
the Wilkerson court listed questions under each of these three areas of inquiry for
courts to answer when determining whether the "potential agent" was in fact an agent
of the police at the relevant time. Id. at 530-31. With these aids, we turn to the
instant record to determine whether appellant met his burden to show that the paths
of CPS and the police had converged such that Alpough was a law enforcement agent
required to comply with Miranda and article 38.22 when interviewing appellant. See
id. at 529 (making clear that person alleging agency relationship between individual
and police has burden of proving it).

Relationship Between the Police and the Interviewer 

 When reviewing the relationship between the police and the potential agent,
the Court of Criminal Appeals has directed courts to determine whether law
enforcement attempted to use the interviewer as its anointed agent. Id. at 530. To aid
in this determination, the Wilkerson court listed the following questions for courts to
answer:


 Did the police know the interviewer was going to speak with the
defendant?

 Did the police arrange the meeting? 

 Were the police present during the interview?


 


 Did they provide the interviewer with the questions to ask? 

 Did they give the interviewer implicit or explicit instructions to
get certain information from the defendant? 

 Was there a "calculated practice" between the police and the
interviewer that was likely to evoke an incriminating response
from defendant during the interview? 

 Does the record show that the police were using the agent's
interview to accomplish what they could not lawfully accomplish
themselves? 


Id. 

 Here, no evidence was presented that the police arranged for or were present
during the interview between Alpough and appellant. In addition, nothing in the
record indicates that the police provided Alpough with questions to ask, knew about
the interview beforehand, or provided implicit or explicit instructions to obtain
certain information from appellant. To the contrary, Officer Stevens testified that she
had not spoken to Alpough about the interview before it occurred, and Alpough
testified that the police stationed at the CAC were not aware that appellant was
coming for an interview. (3) 

 Alpough also testified that, before the interview, she was unable to determine
which Houston Police Department officer had been assigned to the criminal case, but
had decided to pursue the interview for purposes of investigating the CPS referrals
that she had received. Alpough explained that she had two referrals: one related to
the abuse of I.J. and the other relating to appellant's own children being at risk for
abuse. Alpough testified that she interviewed appellant to determine whether his own
children were at risk of abuse. In her testimony, Alpough was clear that she
interviewed appellant in the context of a civil CPS investigating, not as part of a
criminal investigation. 

 Furthermore, the record fails to show that there was any "calculated practice"
between Alpough and the police that was likely to elicit an incriminating response. 
Nor does the record show that the police used Alpough to accomplish what they could
not lawfully accomplish themselves. In sum, it appears that Alpough interviewed
appellant to facilitate her CPS investigation and to determine whether measures
needed to be taken to ensure the safety of appellant's children.

 Appellant points out that the record shows, at the time of the interview, the
police had a presence at the CAC with officers stationed at the front desk and with
Officer Stevens permanently assigned to the CAC. Appellant further points out that
there was an open criminal investigation with respect to appellant's sexual assault of
I.J. Appellant relies on Alpough's testimony at the suppression hearing that she was
working with the police on the date of the interview with regard to appellant's sexual
assault of I.J. 

 We disagree with appellant that this necessarily shows that Alpough was a
police agent for purposes of the interview. When read in the context, Alpough's
testimony indicates mutual cooperation between her and the police with regard to the
criminal investigation generally but does not necessarily indicate that she was
working with the police with respect to the interview specifically. As stated, nothing
in the record shows police involvement with initiating or conducting the interview. 
Rather, the record indicates that Alpough unilaterally decided to conduct the
interview to investigate the CPS referrals she had received involving appellant. 
Alpough indicated that conducting such interviews was a standard CPS practice. 
Alpough also made clear that a primary purpose of the interview was to determine the
risk to appellant's own children to ascertain whether the children could remain in the
same home with appellant.

 After analyzing the record, the evidence would support a finding that law
enforcement was not using Alpough as its "anointed agent" for purposes of
conducting the interview.

Interviewer's Actions and Perceptions

 The next determination is whether the interviewer believed that she was acting
as an agent of law enforcement. Id. In making this determination, the Wilkerson
court instructs courts to ask the following: 


 What was the interviewer's primary reason for questioning the
person? 

 Were the questions aimed at gaining information and evidence for
a criminal prosecution, or were they related to some other goal? 

 How did the interviewer become involved in the case? 

 Did the interviewer help "build a case" that led to the person's
arrest, or was the interviewer pursuing some other goal or
performing some other duty? 


 


 At whose request did the interviewer question the arrestee? 


Id. 

 Here, Alpough testified that she became involved with the case when she was
randomly assigned to it by CPS after the child abuse hotline received the information. 
The record does not indicate that law enforcement played any role in Alpough's
assignment to the case. 

 The record shows that the primary reason for the interview was to facilitate
Alpough's investigation of the two CPS referrals that she had received. Although
appellant was questioned about I.J.'s abuse, the record indicates that the primary goal
of the interview was to determine whether appellant's own two children were at risk
of abuse. By questioning appellant, Alpough sought to ensure the safety of
appellant's own children by determining whether he posed a threat to them. 

 Here, the record reflects that Alpough was performing her duty as a CPS
caseworker when she interviewed appellant. Although the information Alpough
gained from the interview helped to "build a case" against appellant, that alone is not
determinative. As recognized by the Wilkerson court, "the fact a CPS worker is
statutorily required to report suspected child abuse to law enforcement authorities
[does not] transform a CPS worker into an agent of law enforcement. All citizens are
statutorily required to report suspected child abuse to the authorities." Id. at 528
(citing Tex. Fam. Code Ann. § 261.101). The record reflects that the goal of the
interview was not to obtain information to support appellant's arrest; rather, the goal
was to gain further information to aid in the CPS investigation, particularly to gain
information whether appellant's children were at risk.

 Additionally, as discussed, the record further indicates that Alpough, alone,
made the decision to interview appellant as part of her CPS investigation. Nothing
in the record indicates that Alpough interviewed appellant at the behest of law
enforcement.

 In sum, the record would support a finding that Alpough did not believe that
she was acting on behalf of law enforcement when she questioned appellant.

The Defendant's Perceptions of the Encounter 

 The last area of inquiry is the defendant's perceptions of the encounter. Id. at
530. In this regard, courts should ask:


 When the defendant was interviewed, did he believe that he was
speaking with a law-enforcement agent, someone cloaked with
the actual or apparent authority of the police? 



 

 What gave him this impression? 


Id. Alternatively, would a reasonable person in defendant's position believe that the
interviewer was an agent of law enforcement? (4) Id. at 530-31. 

 Appellant testified that he believed Alpough was working as a law enforcement
agent at the time of the interview because Alpough identified herself as a CPS
investigator. According to appellant, Alpough also threatened to have him
handcuffed and arrested and to take his children away if he did not confess to abusing
I.J. 

 In contrast, Alpough testified, "I inform everyone I speak to that I am not a
police officer and no matter what I tell them, I cannot arrest them, I have to work with
them as a family." Alpough testified that she told appellant specifically that he was
not under arrest and that she could not arrest him. Alpough denied that she told
appellant that if he did not confess he would go to jail that day or that appellant's
children would be taken away. Alpough also testified that appellant was free to leave
the interview at any time.

 Appellant points out that much of what Alpough claims to have disclosed to
him was not videotaped. By the same token, the statements that appellant claims
Alpough made to him are also not recorded. Thus, the evidence supporting
appellant's claim that he believed Alpough was acting as a law enforcement agent is
contested. Because the evaluation of this evidence turns on a determination of
credibility and demeanor, the trial court, as the fact finder, was free to believe
Alpough's testimony regarding what she told appellant and to disbelieve that of
appellant. See State v. Ross, 32 S.W.3d 853, 854 (Tex. Crim. App. 2000). 

 Based on this record, an implicit conclusion by the trial court that Alpough was
not an agent of law enforcement, who was required to comply with Miranda or article
38.22 when she interviewed appellant, was within the zone of reasonable
disagreement. We hold that the trial court did not abuse its discretion when it
admitted appellant's videotaped and written statements into evidence.

 We overrule appellant's third issue in each appellate cause number.

Voluntariness of Appellant's Statements


 In his fourth and fifth issues, appellant contends that "the trial court erred in
admitting appellant's written and videotaped statements because they were not
voluntarily given under federal law" or "made pursuant to state law." 

 A statement may be deemed involuntary in three circumstances: (1)
noncompliance with Code of Criminal Procedure article 38.22; (2) noncompliance
with the dictates of Miranda; or (3) a violation of due process or due course of law
because the statement was not freely given (e.g., coercion, improper influences,
incompetence). Wolfe v. State, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). To the
extent that appellant contends that his statements were involuntary because Alpough
did not comply with Miranda or article 38.22, such contention is without merit. As
discussed, the record supports a conclusion that Alpough was not required to give
Miranda warnings to appellant or to comply with article 38.22 because she was not
an agent of law enforcement. Thus, neither noncompliance with Miranda nor
noncompliance with article 38.22 can support appellant's contention that his
statements were involuntary. 

 Appellant also contends that his statements were involuntary under federal and
state due process law because they were coerced. Under federal due process, a
statement is involuntary if the defendant was offered inducements of such a nature
or coerced to such a degree that the inducements or coercion--not his own free
will--produced the statement. See Alvarado v. State, 912 S.W.2d 199, 211 (Tex.
Crim. App. 1995). Under Texas law, article 38.21 of the Code of Criminal Procedure
requires that the statement be "freely and voluntarily made without compulsion or
persuasion." Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon Supp. 2006). Article
38.23 states, in part, "[n]o evidence obtained by an officer or other person in violation
of any provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in evidence
against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann.
art. 38.23(a) (Vernon Supp. 2006). In determining the question of voluntariness, a
court should consider the totality of circumstances under which the statement was
obtained. Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997). The
ultimate question is whether the appellant's will was overborne. Id. at 856. 

 When a defendant makes a pretrial challenge to the voluntariness and
admissibility of his confession, the prosecution bears the burden of proving
voluntariness by a preponderance of the evidence. Alvarado, 912 S.W.2d at 211. 
Voluntariness is determined by considering the totality of the circumstances. 
Creager, 952 S.W.2d at 855. We do not disturb the court's ruling unless there is a
clear abuse of discretion. Alvarado, 912 S.W.2d at 211.

 At the suppression hearing, appellant testified that he felt pressured and
coerced by Alpough to admit to abusing I.J. Appellant claimed that he made the
statements because he "didn't want his children locked up." Appellant cited
Alpough's statement to him that she was an "investigator" and that she had the police
"right around the corner" waiting to arrest him. Appellant also testified that he
believed that he could not leave because Alpough used an access code to enter the
part of the CAC where the interview took place.

 In contrast, the State presented evidence that appellant's statements were
voluntary. Alpough testified that, after he arrived at the CAC, appellant was
informed that he was not under arrest. The evidence showed that appellant was at no
time restrained. Alpough testified that she informed appellant that she was not a
police officer and that she had no authority to arrest him. Although ingress into the
section of the CAC where appellant was interviewed required Alpough to enter a
code on a keypad, the evidence showed that egress from the area was not restricted
in any manner. Alpough also testified that appellant was told that he could leave,
and, in fact, he did leave after the interviews were concluded. Alpough denied
threatening to take appellant's children away or to have him arrested if he did not
confess. 

 In his fourth issue, appellant asserts that, under federal law, his statements were
"involuntary, not freely made and the direct result of coercive tactics of Alpough, the
CAC, and police, acting in unison with one another in course of a criminal
investigation." In support of this assertion, appellant states that he "incorporates
herein paragraphs four through nine of Issue Number Three above." (5) In his fifth
issue, appellant contends that his statements were involuntary under state law. To
support his fifth issue, appellant "adopts and incorporates all of the arguments and
text presented in Issue Number Four." 

 Appellant fails to provide a substantive analysis of the relevant law as it applies
to the portions of the record on which he intends to rely. In this regard, appellant fails
to preserve any arguments that he intended to raise by incorporating other portions
of his brief. See Tex. R. App. P. 38.1(h) (providing, in part, "The brief must contain
a clear and concise argument for the contentions made . . . ."); McCarthy v. State, 65
S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001) (holding that appellant did not preserve
issue for review when appellant failed to explain how factual record proved her
confession to police was made involuntarily, to present legal authority to support
argument her confession was involuntary, and to apply law to facts to support
conclusion confession was involuntary). 

 In his brief, appellant does contrast the testimony of Alpough and Officer
Stevens at the suppression hearing. Appellant points out that Alpough testified that
Officer Stevens requested to speak with appellant, after she informed Officer Stevens
that appellant had admitted to improper contact with I.J. Officer Stevens testified that
Alpough told her that appellant requested to speak with the officer. According to
Officer Stevens, appellant responded affirmatively when she asked him if he wanted
to talk to her. Appellant notes that such discussion is not seen on the videotape
between him and Officer Stevens. Appellant contends that this evidence supports his
assertion that his statements at the CAC were neither "voluntary nor freely made." 

 Although not explained, we assume that appellant cites this testimony to
undermine the credibility of Alpough's and Officer Stevens's testimony as a whole. 
Here, the trial court was the exclusive trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony at the suppression hearing. See
Cobb v. State, 85 S.W.3d 258, 271 n.50 (Tex. Crim. App. 2002); see also Ross, 32
S.W.3d at 855. Thus, the trial court, as the fact finder at the hearing, was in the best
position to resolve conflicts arising from any apparent discrepancy in the testimony. 
Concomitantly, the trial court was free to believe the testimony of the State's
witnesses and to disbelieve that of appellant. See Ross, 32 S.W.3d at 854. Without
more, we must defer to the trial court's implicit credibility determination in this case. 
 We conclude that the State's evidence would sufficiently support a conclusion
by the trial court that appellant gave his statements voluntarily. That is, whether the
statements were voluntarily given was within the zone of reasonable disagreement
based on the record and giving due deference to the trial court's role as fact finder. 
Thus, we hold that appellant has not shown that the trial court abused its discretion
when it denied appellant's motion to suppress and admitted appellant's statements at
trial. 

 We overrule appellant's fourth and fifth issues in each appellate cause. 




Conclusion


 We affirm the judgments of the trial court.





 Laura Carter Higley

 Justice



Panel consists of Chief Justice Radack and Justice Keyes and Higley.


Publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i)-(ii) and 22.021(a)(2)(B) (Vernon
Supp. 2006).
2. To the extent that appellant's appellate argument could be construed to complain of
the State's reference to the videotape not being admitted, we note that, the jury heard
testimony, without objection, that I.J. had given a videotaped interview; thus, the jury
was aware that the videotape existed. We further note that, during voir dire, the State
told the venire panel that videotaped interviews of children do not come into
evidence. Appellant made no objection to this remark by the State. Because this
information was imparted to the jury members without objection, appellant did not
preserve this challenge for appellate review. See Wilson v. State, 179 S.W.3d 240,
249 (Tex. App.--Texarkana 2005, no pet.) (recognizing that, "to preserve a complaint
about improper jury argument, a defendant must object each time the impermissible
argument is made, or the complaint is waived"). Moreover, to the extent that the trial
court erred by overruling appellant's objection to the State's remark that the videotape
had not been admitted into evidence, such statement alone was not harmful. That is,
such statement did not affect the substantial rights of appellant, given the jury's
previous knowledge that the videotape existed and that it had not been admitted into
evidence. See Tex. R. App. P. 44.2(b).
3. We refer not only to Alpough's testimony given at the suppression hearing, but also
to her trial testimony given before the trial court admitted the statements over
appellant's renewed objections. 
4. Because there was nothing in the record indicating the appellant's perceptions of the
encounter, the Wilkerson court evaluated the case from the standard of a reasonable
person in the appellant's position. Wilkerson v. State, 173 S.W.3d 521, 533 (Tex.
Crim. App. 2005). In contrast, here, appellant testified about his perceptions of the
interview with Alpough.
5. The paragraphs in appellant's brief are not numbered.