# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00730-CR

---

**Derek Steve Banks, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 18-2491-K26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Derek Steve Banks of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(2)(B). The jury assessed punishment at seventy years in prison. Appellant contends that (1) his trial was unfair because he was not given a competency evaluation despite being severely distraught during trial, (2) he was harmed by the trial court's failure to grant a continuance when he did not appear for the third day of trial, (3) the evidence is legally insufficient to support his sentence, (4) a mistrial should have been granted when prejudicial evidence was admitted, and (5) his trial attorney was ineffective when he did not object to hearsay that prejudiced Appellant's right to a fair trial. We will affirm the judgment.

# BACKGROUND[1]

Appellant was convicted of assaulting his daughter, Victoria, in 1995. Victoria was thirty-five years old at the 2022 trial. She testified that, when she was around nine years old, she awoke sensing wetness around her mouth. She reached to wipe it away and found Appellant trying to put his tongue into her mouth. She testified that he forced her to put her tongue in his mouth, then put his tongue into her mouth, and said, "This is how people kiss." He then replaced his tongue with his thumb, then placed his penis in her mouth. She cried out, and her mother started upstairs to check on her. Appellant got up quickly and ran to take her mother back downstairs.

Victoria recounted years of Appellant's use of guilt and his religious theories to persuade her to keep the assault secret to preserve their family. She testified about other incidents of Appellant physically contacting her in ways that had sexual aspects. She said that Appellant was violent toward her mother, Mary. Victoria told Mary about the 1995 assault in around 2004, which led to Appellant moving out of the family home. He returned briefly a few weeks later but left again when Victoria objected. Mary told Victoria's younger brother, Ben, about the assault in around 2014. In 2018, after some therapy, Victoria decided to tell law enforcement.

Mary, Ben, and Victoria's therapist all testified at trial. Mary and Ben testified about their discussions with Appellant about his abuse of Victoria. Ben testified that Appellant said he would accept the consequences of what he did if Victoria ever came forward; he wanted to make amends. Victoria's therapist testified regarding their sessions and Victoria's progress.

---

[1] We will use pseudonyms in this opinion for members of Appellant's family.

The therapist denied using hypnosis to help Victoria recover memories and denied saying that she should talk to law enforcement.

Appellant was late for jury selection, then attended the first day of testimony. He did not attend the third day of trial, instead reporting to a sheriff's deputy that he had taken ten over-the-counter sleeping pills and declaring to his attorney that he was "done." The trial court conducted an informal inquiry into Appellant's competency. The court heard on the record outside the presence of the jury from counsel and a sheriff's deputy who had talked with Appellant on the phone. The trial court declined to conduct a formal competency examination or to suspend the trial.

## DISCUSSION

Appellant contends that the court should have delayed the trial and conducted a formal competency examination after his comments and failure to attend the third day of trial. He asserts that the trial court should have declared a mistrial based on Mary's testimony that he deemed backdoor hearsay and that he was harmed by his counsel's ineffectiveness in failing to object to other testimony. Appellant argues that his sentence is not supported by the evidence. He is incorrect on all counts.

## I.  Appellant was not denied a fair trial by the trial court's decision not to order a formal competency examination.

By his first issue, Appellant contends that his trial was unfair because he became severely distraught during trial and was not formally evaluated for competency. Appellant argues that his absence on the third day of trial, his taking of over-the-counter sleep aids, his

reported references to suicide and seeking help at a hospital, and his hanging up on his counsel provided some evidence of incompetence that merited formal competency examination.

The conviction of a legally incompetent person violates due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Turner v. State*, 422 S.W.3d 676, 688-89 (Tex. Crim. App. 2013); U.S Const. Amend. XIV. A defendant is incompetent to stand trial if the defendant does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." Tex. Code Crim. Proc. art. 46B.003(a). A trial court determines competence to stand trial in a two-phase inquiry—an informal inquiry followed, if necessary, by a formal competency trial. *Id.* art. 46B.004–.005.

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* art. 46B.003(b). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court from any credible source, the court on its own motion shall suggest that the defendant may be incompetent to stand trial. *See id.* art. 46B.004. A "suggestion" from any credible source that the defendant may be incompetent prompts an informal inquiry. *Id.* art. 46B.004(a), (c), (c-1). The court is not required to have a bona fide doubt about the defendant's competence to hold the informal inquiry. *Id.* art. 46B.004(c-1). If after the informal inquiry the court determines that evidence exists to support a finding of incompetency, it must stay all other proceedings, order a psychiatric or psychological competency examination, and (except in certain circumstances) hold a formal competency trial. *Id.* arts. 46B.004(d), .005(a), (b), .021(b).

A court must focus on three matters in the informal inquiry. First, the standard is whether there is "some evidence" of incompetency to stand trial. *Id.* art. 46B.004(c); *Boyett*

4

*v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). There must be "more than none or a scintilla" of evidence that "rationally may lead to a conclusion of incompetency." *Boyett*, 545 S.W.3d at 564. Second, a trial court must consider only evidence of incompetency and must not weigh that against evidence of competency. *Id*. Third, some evidence must be presented to show that a defendant's mental illness is the source of his inability to participate in his own defense. A mentally ill defendant is not necessarily incompetent to stand trial. *Turner*, 422 S.W.3d at 696. Evidence showing mental illness or refusal to participate in trial does not warrant a formal competency examination; there must be some evidence that the defendant's mental illness caused the refusal to participate. *Boyett*, 545 S.W.3d at 563.

A defendant's suicide attempt does not necessarily show incompetence to stand trial. *Mayfield v. State*, 536 S.W.3d 523, 526 (Tex. App.—Amarillo 2017, no pet.) (formal retrospective competency exam showed that defendant's absence due to suicide attempt was voluntary because his midtrial decision to attempt suicide was rationally reached when it became clear that charges would not be resolved in his favor); *accord, Grizzard v. State,* No. 01-06-00930–CR, 2008 WL 2611865, at *4–5 (Tex. App.—Houston [1st Dist.] July 3, 2008, no pet.) (mem. op., not designated for publication) (holding that incoherence due to ingestion of medication in suicide attempt after guilty verdict did not show defendant was incompetent to stand trial in sentencing phase). When a defendant voluntarily absents himself after pleading to the indictment or after the jury has been selected, the trial may proceed to its conclusion. Tex. Code Crim. Proc. art. 33.03; *Bottom v. State,* 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.).

We review challenges to the adequacy of the trial court's informal competency inquiry, its findings and determinations following its informal inquiry, and its decision whether

to order a formal competency examination, for an abuse of discretion. *George v State*, 446 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We greatly defer to a trial court's firsthand assessment of a defendant's ability to rationally and factually understand the proceedings and to assist counsel. *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003). We will find an abuse of discretion only if the decision is so clearly wrong as to lie outside the zone of reasonable disagreement or is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). We will uphold the trial court's ruling if it "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We should not substitute our judgment for that of the trial court. *Iniquez v. State*, 374 S.W.3d 611, 616 (Tex. App.—Austin 2012, no pet.) (holding that evidence of amnesia does not automatically raise bona fide doubt about competency to stand trial.).

At the beginning of the third day of trial, Appellant's attorney, Marc Chavez, reported to the court on his concerns about his absent client. Chavez said he had spoken to Appellant on the phone that morning while Appellant was also speaking to a deputy sheriff doing a welfare check. Chavez described his client as coherent and communicating, but sometimes incoherent. Chavez said he received "communications about suggestion of suicide" and that Appellant "mentioned seeking help at a hospital in Round Rock." Chavez said Appellant's speech was delayed and that Appellant might have ingested pills. Chavez said that Appellant "did mention that he was not going to appear."

Williamson County Sheriff's Deputy Adam Hughes spoke to the court on the record about his interactions with Appellant and later testified about them. Hughes said that Appellant answered his second call. Appellant admitted taking about ten over-the-counter

sleeping pills but denied being suicidal or wanting to harm himself. Hughes told the court that Appellant "said that he did not want to deal with the current situation." Appellant refused to provide his location and stopped responding to Hughes before hanging up.

Chavez said that he had had extensive conversations with Appellant about his defense and that he had intended to create an extensive record about Appellant's choice whether to testify. Because no final decision had been made on testifying, Chavez requested a continuance so he could get Appellant's final decision and at least check on his condition.

The court stated that it had made clear to Appellant the previous day that the State would be resting and that the defense case would start in the morning. The court was inclined to resume the trial but recessed to give Chavez an additional chance to contact Appellant. Chavez said Appellant answered the call and they "chatted about noncase stuff for a little bit" but "immediately when we resumed talking about the case, he said he was—he was abrupt. He said he was done" and hung up. The court denied the motion for continuance and called in the jury.

Hughes testified that he asked Appellant about reports that Appellant had said that he "was going to call it [quits] and that he was going to take some medications." Hughes testified about the interaction he had told the court of previously, adding a detail that Appellant put him on hold for two minutes to speak to someone else before returning to Hughes's call; Appellant spoke for about five seconds, then was silent for two minutes before hanging up. Hughes described Appellant's speech as lethargic but not slurred. He said Appellant's answers were deliberate and evasive. Hughes said that he did not upgrade the welfare check's urgency because Appellant said he was not suicidal.

We conclude that the trial court did not abuse its discretion or deny Appellant a fair trial by proceeding to trial in his absence without ordering a formal competency

7

examination. The court had observed Appellant for two days of trial and heard testimony from his ex-wife and children that illuminated his mental processes from years prior. The court reasonably could have understood Appellant's reported words that he wanted to "call it" and was "done" not as incompetency but conformity with his previous representation to Ben that he would accept the consequences of his actions. The court could have determined, based on observation and the statements by Appellant's counsel and the deputy who spoke with Appellant, that there was no evidence that Appellant lacked the capacity to assist in his defense by understanding the charges against him and the potential consequences of the trial; disclosing to counsel pertinent facts, events, and states of mind; engaging in reasoned choices of legal strategies and options; understanding the adversarial nature of the trial; exhibiting appropriate courtroom behavior; and testifying. *See Lampkin v. State*, 470 S.W.3d 876, 907-08 (Tex. App.—Texarkana 2015, pet. ref'd) (listing elements of competency to stand trial). The court could have concluded that Appellant's consumption of sleeping pills and absence from the courtroom did not show incapacity, but voluntary choice. Alternatively, the court might have concluded, as the examiner did in *Mayfield* in her report to the court, that even a suicide attempt did not show incompetence; the *Mayfield* examiner concluded, "Once it became clear that there was no hope that his charges would be resolved in his favor, [appellant] made a considered, rational decision to end his life while he was out of custody and had the means to do so as he desired to avoid lifelong incarceration and related hardships." 536 S.W.3d at 525. Likewise, here the court may reasonably have concluded that Appellant's actions—whatever his intent—were no evidence of incompetency.

We find no abuse of discretion or deprivation of a fair trial and overrule issue one.

**II. The court did not abuse its discretion by denying Appellant's midtrial motion for continuance.**

By his second issue, Appellant contends that he was harmed by the court's failure to grant a continuance. We review the court's denial of a motion for continuance for an abuse of discretion. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006). A defendant must show "specific prejudice to his defense" to establish that the trial court abused its discretion in refusing to grant a continuance. *Id*.

Appellant contends that he was harmed because he did not participate in his punishment hearing. He contends that he was "likely incompetent, because he became suicidal." He contends that, had he participated in the remainder of his trial, it might have led to a very different sentence.

The record does not show an abuse of discretion in denying the continuance. The only indication is that Appellant understood the consequences of trial and knew its schedule and that he voluntarily took sleeping medication instead of attending the trial. There is no evidence that he unwittingly numbed himself. Appellant was contacted multiple times by law enforcement and his counsel. He explained his choice to take sleeping pills, refused to tell the deputy his location for an in-person visit, then stopped talking. He spoke with his counsel until counsel mentioned the trial; then, Appellant abruptly "said he was done" and hung up. The court did not abuse its discretion by deciding that Appellant had voluntarily absented himself during trial and that the trial could proceed without him. *See* Tex. Code Crim. Proc. art. 33.03.

We overrule issue two.

**III.    The court did not err by denying the motion for mistrial based on the admission of evidence.**

By his fourth issue, Appellant contends that a mistrial should have been granted when prejudicial evidence was admitted.  "A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."  *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  Thus, a trial court may declare a mistrial "if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error."  *Id*.  A mistrial is appropriate only in extreme circumstances for a narrow class of highly prejudicial and incurable errors.  *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).  A trial court should grant a mistrial only when residual prejudice remains after less drastic alternatives are explored, such as instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand.  *Id*. at 884-85.

We review a trial court's denial of a motion for mistrial for an abuse of discretion.  *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  A reviewing appellate court will "reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree."  *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (internal quotes omitted).  "The determination as to whether a given error calls for a mistrial must be made by examining the peculiar facts and circumstances of each case."  *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990).  "Error is not reversible if it is harmless."  *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."  *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  "[T]he appellate court is not to substitute its

judgment for that of the trial court, but rather must decide whether the trial court's decision was arbitrary or unreasonable." *State v. Gonzalez*, 855 S.W.2d 692 (Tex. Crim. App. 1993) (quoting *Landry v. Travelers Insurance Company*, 458 S.W.2d 649, 651 (Tex. 1970)). Absent such an abuse of discretion, an appellate court "would not be justified in reversing the judgment." *Smith*, 286 S.W.3d at 339.

Appellant asserts that, before outcry testimony from a witness about the child's outcry can be admitted over a hearsay objection, the State must give timely notice of its intention to adduce the outcry witness's testimony, provide the name of the witness, and provide a written summary of the testimony; then the court must find in a hearing conducted outside the presence of the jury that the statement is reliable and that the child testifies or is available to testify. Tex. Code Crim. Proc. art. 38.072, § 2. Appellant argues that the court abuses its discretion by admitting outcry testimony without a hearing first. *Moore v. State*, 233 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The objection came during the State's examination of Mary. The State had asserted that it was not going to qualify an outcry witness. While the State was questioning Mary about her conversation with Appellant, the following exchange occurred:

> Q. Did you ever make comments to him about specific things that you believed that he had done to [Victoria] and just get specific about what you believed had happened?
>
> A. Yes.
>
> Q. Okay. And when you made those specific comments to him about what you believed had happened, did he deny them or did he agree that that's part of what he did or—
>
> A. Yeah. He didn't deny anything.

11

Q. Okay. What are specific acts that you believe had happened that you told him that you knew about that he did not deny?

A. That he put his penis in [Victoria]'s mouth when she was nine and—

Appellant interrupted and asked to approach the bench. He objected that Mary's testimony was hearsay and backdoor hearsay in the nature of unqualified outcry testimony. The State responded that Mary's testimony was her approach to Appellant about *her* understanding of what had happened and his response or non-response. Appellant requested a mistrial because the testimony came in without the opportunity to have an outcry-witness hearing.

Any error in the admission of Mary's testimony was rendered harmless by other evidence at the trial. The *Moore* case, on which Appellant relies, reviewed the admission of evidence without an outcry hearing as non-constitutional in nature under Texas Rule of Appellate Procedure 44.2(b). 233 S.W.3d at 35. Non-constitutional error must be disregarded unless it affects substantial rights of the defendant. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Moore*, 233 S.W.3d at 35. A conviction should not be overturned for such error if this Court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Moore*, 233 S.W.3d at 35. "The erroneous admission of evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *Koury v. State*, 684 S.W.3d 537, 551 (Tex. App—Austin. 2024, pet. ref'd). Victoria testified without objection that Appellant

12

"replaced his thumb with his penis in my mouth." Victoria's therapist testified without objection that Victoria told her Appellant "forced his penis into her mouth." Any error in the admission of Mary's testimony was harmless as was the denial of the motion for mistrial.

We overrule issue four.

## IV. Appellant did not show that he was prejudiced by any ineffectiveness of his counsel.

By his fifth issue, Appellant contends that his trial counsel was ineffective by not objecting to hearsay that prejudiced his right to a fair trial. To prevail on a claim of ineffective assistance of counsel, an appellant must establish that counsel's performance was deficient, and he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. Prejudice exists if an appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id*. at 813. "Claims of ineffective assistance must be firmly rooted in the record." *Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023).

On direct appeal, there is a "substantial risk of failure" when raising ineffective assistance of counsel because in most cases, "the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 813-14. If trial counsel has not had the chance to explain the reasons for his conduct, an appellate court "will not conclude the challenged conduct constituted deficient performance unless the conduct

13

was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Appellant contends that his counsel was ineffective for failing to object to Mary's testimony that Victoria said that Appellant sexually abused her. Appellant asserts that this failure laid the groundwork for the court to allow Mary's later outcry-style backdoor hearsay testimony about Victoria's statements to Mary.

An isolated instance of failure to object does not necessarily render counsel ineffective. *Johnson v. State*, 629 S.W.2d 731, 736 (Tex. Crim. App. 1981). We hesitate to declare counsel ineffective based on a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions-whether those actions were of strategic design or the result of negligent conduct. *Thompson*, 9 S.W.3d at 814. The record reflects that Appellant was afforded reasonably effective assistance of counsel. Even if the absence of an objection fell short, Appellant has not overcome the strong presumption that counsel's decision fell within the wide range of reasonable professional assistance. *Id.*

Further, Appellant has not shown that, but for the "failure" to object, the result of the trial would have been different. When the attorney did not object to that testimony, Ben had already testified without objection that Appellant admitted to "molesting" Victoria. After Mary's testimony, Victoria testified without objection that Appellant put his penis in her mouth, and her therapist testified that Victoria told her about that same event. Appellant has not shown a reasonable probability that a timely objection to Mary's testimony would have changed the outcome.

We overrule issue five.

**V.   Appellant has not shown reversible error in his sentence.**

By his third issue, Appellant contends that the evidence was legally insufficient to support his sentence. "Four goals of penal sanctions have been recognized as legitimate: retribution, deterrence, incapacitation, and rehabilitation." *Meadoux v. State*, 325 S.W.3d 189, 195 (Tex. Crim. App. 2010). The decision of what punishment to assess within the statutorily prescribed range for a given offense is a normative, discretionary function. *Barrow v. State*, 207 S.W.3d 377, 379-80 (Tex. Crim. App. 2006). When a punishment decision is based on "nothing at all," and a proper objection is made, a sentencing court violates the prohibition against the deprivation of liberty except by due course of law. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Jarvis v. State*, 315 S.W.3d 158, 160 (Tex. App.—Beaumont 2010, no pet.).

Appellant was sentenced within the range of punishment. Appellant was convicted of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(2)(B). That offense is a first-degree felony. *Id.* § 22.021(e). The punishment range for first-degree felonies is five to ninety-nine years or life in prison. *Id.* § 12.32. Appellant was sentenced to seventy years in prison. Appellant's sentence is legal.

Further, Appellant's sentence is based on much more than "nothing at all." Victoria testified that Appellant sexually assaulted her when she was nine years old and continued inappropriate physical behaviors for several more years. She testified that Appellant told her that it was her duty to forgive him, that she should "get over it" to keep the family together, and that "at least you weren't raped." She testified that the assault and the related secrecy and distortion of family relationships continued to affect her decades later. Testimony at guilt-innocence from Victoria's mother, brother, and therapist supported the sentence. *See*

*Wright v. State*, 212 S.W.3d 768, 776 (Tex. App.—Austin 2006, pet. ref'd) (evidence admitted during guilt-innocence phase may be considered in assessing punishment without re-offer of that evidence). We cannot say that the jury's imposed sentence is not based on the evidence and at least one of the four goals of penal sanctions. *See Meadoux*, 325 S.W.3d at 195.

We overrule issue three.

## CONCLUSION

Finding no reversible error presented, we affirm the judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Crump

Affirmed

Filed:   September 19, 2025

Do Not Publish