Opinion issued April 26, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00055-CR

———————————

Rex Lane Jr., Appellant

V.

The
State of Texas,
Appellee



 



 

On Appeal from the 230th District Court

Harris County, Texas



Trial Court Case No. 1271497

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Rex Lane Jr., of the felony offense of aggravated
robbery and, after finding the allegations in an enhancement paragraph true, assessed
his punishment at forty years’ confinement.[1]  In two points of error, Lane contends that
(1) the evidence is insufficient to support his conviction, and (2) the trial
court erred in denying his motion to suppress his videotaped confession.  We affirm.

Background

          The
complainant, Gabrel Garcia, was robbed at gunpoint by
two men while waiting in his hotel room for a female companion, Christi Tucker,
to arrive.  Garcia testified that he had
been waiting for about an hour when Tucker called to tell him that she would be
there shortly and asked him to let her in. 
Thinking Tucker was there, Garcia opened the
motel room door, but was greeted instead by a young man standing in the doorway
pointing a gun at Garcia’s head.  The gunman
pushed Garcia back into the room, instructed him to turn around and lie on the
bed, and took Garcia’s property.  Approximately
two minutes later, a second man entered, tied Garcia’s hands behind his back
with an extension cord, and then tied his feet to his hands.  According to Garcia, the men then pulled him
off the bed into a standing position, pushed him into the bathroom, and
left.  Although told to stay in the
bathroom, the extension cord was so loosely tied that Garcia was able to reach the
window in time to write down the license plate number of the Trail Blazer in
which the men drove off, and he immediately called the police.        

          Garcia
testified that, although instructed not to look at them, he could easily see
both men because the lights were on in the motel room.  Garcia later identified Lane from a
photo-spread as the second man who entered the motel room and tied him up.  Garcia also identified Lane in court as one
of the men who robbed him.

          Detective
Lori Roberts, a twenty-seven year veteran of the Houston Police

Department
assigned to the robbery unit, investigated the robbery.  She testified that Lane was first identified
as a suspect based upon information HPD received from the motel clerk.  According to Roberts, the motel’s records, which
contained Lane’s driver’s license information, indicated that Lane had rented
the room next to Garcia’s and that the Trail Blazer with the license plate
number Garcia had recorded was linked to Lane’s room registration.  Roberts prepared a photo-spread from which Garcia
identified Lane as the second man who tied him up.  Roberts then obtained a warrant for Lane’s
arrest.

          After his arrest, Lane was interviewed
by Detective Roberts and her partner, Officer Steve Hooper.  That videotaped interview was admitted into
evidence at trial over Lane’s objection. 
During the interview, although Lane initially denied any involvement in
the robbery, he ultimately said that he and Tucker lived in the same apartment
complex and were friends.  He also said
that Tucker had met Garcia at a gas station and had arranged to meet him at the
motel with the intent to rob him.  Tucker
thought Garcia had money because he owned his own business and had business
cards.  Lane drove Tucker, another woman,
and that woman’s boyfriend to the motel in his sister’s Trail Blazer the night
of the robbery, and he rented a room close to Garcia’s.  Lane also admitted that he went into Garcia’s
room, tied him up and put him in the bathroom, because
he did not want Garcia to see them leave in his sister’s Trail Blazer.  They took Garcia’s wallet and his cell phone
and tried to use one of his credit cards at an ATM.

Motion to Suppress

          We
begin by addressing Lane’s second point of error.  Arguing that the confession
was involuntary because the circumstances of the interrogation were inherently
coercive, Lane contends that the trial court erred in denying his motion to
suppress the videotaped confession.  Specifically, he argues that the totality of
the circumstances—the excessive length and cramped conditions of his
interrogation, coupled with the fact that the officer “cursed” at him—were such
that his free will was overborne, rendering his confession involuntary.

Factual Background

          At the suppression hearing, Lane
testified that he was interrogated for over an hour in a small room by two
officers sitting between him and the door. 
Although for the first thirty-nine minutes he denied any involvement in
the robbery, Lane claimed that he was nervous and afraid and that the officers
badgered him until he confessed.  Lane also
accused the officers of screaming at him and neglecting to give him his Miranda warnings.  Lane acknowledged, however, that the officers
never hurt him or threatened him and that he never asked to end the
interrogation or requested an attorney.

          The State controverted pertinent
portions of Lane’s testimony with the testimony of Officer Hooper, one of the
officers present during the interrogation. 
Hooper testified that he and Detective Roberts interviewed Lane for
approximately an hour and ten minutes in one of the twelve‑feet‑by‑twelve‑feet
interview rooms available at the jail complex. 
He and Detective Roberts sat between Lane and the door, but, although under
arrest, Lane was not handcuffed. 
According to Officer Hooper, Detective Roberts, the primary interviewer,
began the interview by reading Lane his Miranda
warnings from the blue card issued by the Harris County District Attorney’s
Office.  Lane affirmatively stated that
he understood each of those rights and he verbally agreed to waive his rights
so that he could talk with the officers.

          Officer Hooper testified that he and Detective
Roberts never threatened Lane or promised him anything for his statement.  He also testified that Lane never asked for
food or drink, and he did not ask to use the restroom during the interrogation.  Lane also never asked to end the interrogation,
nor did he ask for an attorney.  Officer Hooper
also testified that Detective Roberts never yelled at Lane, but she did accuse
him of lying and referred to some of his comments as “bullshit.”

          The videotape of the interrogation,
including Lane’s confession, was admitted into evidence at the suppression hearing.  After hearing the testimony, watching the
videotape, and considering the arguments of counsel, the trial court denied
Lane’s motion to suppress.  The trial
court subsequently filed findings of fact and conclusions of law in which,
among other things, it found that Officer Hooper was a reliable, credible, and
truthful witness, whereas Lane was neither credible nor truthful.  The court also concluded that the confession was
admissible because the State established, under the totality of the
circumstances, that Lane had knowingly, intelligently, and voluntarily waived
his rights under article 38.22 when he agreed to speak with the officers after
having been read his Miranda warnings,
and that the interrogation was not coercive. 

Standard of Review

          We
review the denial of a motion to suppress for abuse of discretion.  Shepherd v. State, 273 S.W.3d 681, 684 (Tex. Crim.
App. 2008).  We give almost total deference
to the trial court’s express or implied determinations of historical facts and
review de novo the court’s application of the law to those facts.  Id.
 We view the evidence in the light most
favorable to the trial court’s ruling.  Id.
 The trial court is the “sole trier of
fact and judge of credibility of the witnesses and the weight to be given to
their testimony.”  St.
George v. State, 237 S.W.3d
720, 725 (Tex. Crim. App. 2007).

          When,
as in this case, findings of fact are made, we determine whether those facts
are supported by the evidence.  Keehn v. State, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citing State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim.
App. 2006)).  Furthermore,
we review the trial court’s conclusions of law de novo, upholding the ruling if
it is supported by the record and it falls under any correct legal theory
applicable to the case.  State v. Iduarte, 268 S.W.3d 544, 549 (Tex. Crim.
App. 2008).

Voluntariness of Confession

          A
statement may be deemed “involuntary” under three different theories: (1) failure
to comply with Code of Criminal Procedure article 38.22 (the Texas confession
statute); (2) failure to comply with the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966); or (3) it
was taken in violation of due process or due course of law because the
statement was not freely given due to coercion, force, or
improper influence.  Wolfe v. State, 917
S.W.2d 270, 282 (Tex. Crim. App. 1996); Moore
v. State, 233 S.W.3d 32, 44 (Tex. App.—Houston [1st Dist.] 2007, no pet.).
 A confession is involuntary “only if
there was official, coercive conduct of such a nature
that any statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice by its maker.”  Alvarado
v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); see also Cravin v. State, 95 S.W.3d 506,
510 n.3 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d)
(“The Texas Due Course of Law provision has not been held to provide any
greater protection than that afforded by the United States Constitution’s Due
Process Clause.”).  Determination
of a statement’s voluntariness is made by examining the totality
of the surrounding circumstances.  Delao
v. State, 235 S.W.3d 235,
239 (Tex. Crim. App. 2007); Creager v.
State, 952 S.W.2d 852, 855
(Tex. Crim. App. 1997).  These can
include: (1) relevant facts about the interrogation itself, such as the
physical location of the interrogation, the length of the detention, and the number
of people present; (2) the extent to which the accused was denied access to
outside resources, such as family, friends, or a lawyer; (3) whether the
accused was denied essential physical needs, such as food, drink, or access to
a bathroom; (4) the physical comfort or discomfort of the accused; (5) the
mental and physical condition of the accused; and (6) the nature and extent of
any promises or threats made to the accused.  See Arizona v. Fulminante, 499 U.S. 279, 286, 111 S. Ct. 1246
(1991); Nenno v. State, 970 S.W.2d 549,
557 (Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas,
4 S.W.3d 720, 727 (Tex. Crim. App. 1999).

Analysis

          Lane argues that the
totality of the circumstances compel a determination that his inherently
coercive interrogation rendered his confession
involuntary, and, therefore, the trial court’s denial of his motion to
suppress was error.  He points to three
factors in particular: (1) the excessive length of his
interrogation; (2) the cramped conditions of his interrogation; and (3) the
fact that one of the officers “cursed” at him.

          Both the videotape
and the hearing testimony reflect that Lane was interviewed for approximately
an hour and fifteen minutes in one of the twelve-feet-by-twelve-feet interview
rooms available at the jail complex.  Neither
the length nor the conditions of Lane’s interrogation were, in and of
themselves, coercive.  See Clark v. Murphy, 331 F.3d 1062, 1073 (9th Cir. 2003) (concluding
confession not coerced where defendant detained in six-foot-by-eight-foot
interview room for approximately eight hours and did not ask for food, water or
to go to bathroom); Smith v. State, 779 S.W.2d 417, 428–29 (Tex.
Crim. App. 1989) (stating eight hours of questioning without food did not
render confession involuntary in light of defendant’s willingness to continue);
Giddens v. State, 256
S.W.3d 426, 431 (Tex. App.—Waco 2008, pet. ref’d) (concluding
five hour interrogation of defendant with multiple sclerosis not coercive where
nothing in record reflected defendant was unwilling to talk).  Nor were the facts that Detective Roberts
called Lane a liar and used profanity coercive. 
See Wyatt v. State,
23 S.W.3d 18, 23–25 (Tex. Crim. App. 2000) (rejecting defendant’s claim that
his confession was coerced because
interrogating officers called him a liar and “talked
short” to him).  Lane conceded at the
suppression hearing that there was no physical abuse, threats, or promises in
exchange for his statement.  He also conceded
that he never asked to terminate the interview or for an attorney.  Both Officer Hooper’s testimony and the
videotape reflect that Lane never requested food or drink, and he did not ask
to use the restroom.  Officer Hooper’s
testimony and the videotape further reflect that despite Lane’s testimony to
the contrary, Detective Roberts did read Lane his Miranda warnings and that Lane affirmatively stated that he
understood each of those rights and verbally agreed to waive his rights so that
he could talk with the officers.

          Viewing the evidence in the light most
favorable to the trial court’s ruling, we hold that the trial court’s finding that
Lane’s statement was voluntary was not an abuse of discretion, and we overrule
Lane’s second point of error.

Sufficiency of Evidence Supporting Conviction

          Lane’s first point of error contends that
the evidence is insufficient because the State failed to prove that he was the
person who perpetrated the offense.

          Our review of evidentiary sufficiency determines
whether any rational fact‑finder could have found the essential elements
of the offense beyond a reasonable doubt, and we view this evidence in the
light most favorable to the verdict.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Brooks
v. State, 323 S.W.3d 893,
912 (Tex. Crim. App. 2010).  As the
jury is the exclusive judge of the facts, the credibility of the witnesses, and
the weight to be given to their testimony, the jury may accept one version of
the facts and reject another, and it may reject any part of a witness’s
testimony, and we may not re-evaluate the weight and credibility of the
evidence or substitute our judgment for that of the fact‑finder.  See Brooks, 323 S.W.3d at 899; Bartlett v.
State, 270 S.W.3d 147, 150
(Tex. Crim. App. 2008); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); Margraves v.
State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000), overruled on other grounds by Laster
v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).  We accord almost complete deference to the
jury’s determinations of credibility and resolve any
inconsistencies in the evidence in favor of the verdict.  See Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008); Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App.
2000); see also Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (“When the record supports
conflicting inferences, we presume that the factfinder
resolved the conflicts in favor of the prosecution and
therefore defer to that determination.”).

          Lane confessed to his involvement in
Garcia’s robbery in a videotaped confession that was played for the jury.  This videotaped confession alone is
sufficient to establish Lane’s identity as the perpetrator.  See
Emery v. State, 881 S.W.2d 702, 706 (Tex. Crim. App. 1994) (stating
identity of perpetrator of offense may be established by extrajudicial
confession alone); Gribble v. State,
808 S.W.2d 65, 70–71 (Tex. Crim. App. 1990) (same).  But here, the jury also heard Garcia’s testimony
that he clearly observed both men because the room was well lit.  Garcia went on to identify Lane in a
photo-spread and in court as the man who tied him up.  Lane argues that Garcia’s testimony is
unreliable because he saw Lane only out of the corner of his eye and fleeting
glimpses render his identification unreliable. 
Garcia’s veracity and the clarity of his sight are jury issues, and the
jury presumably believed Garcia.  See Brooks,
323 S.W.3d at 899 (stating jurors are exclusive judges of facts, credibility of
witnesses, and weight to be given to witnesses’ testimony).

          Because, when viewing the evidence in the
light most favorable to the verdict, a rational trier of fact could have found
that Lane’s identity as the perpetrator was proven beyond a reasonable doubt, we
overrule Lane’s first point of error.  See Brooks, 323 S.W.3d at 902.

Conclusion

          We affirm
the judgment of the trial court.

 

 

                                                                      Jim
Sharp

                                                                      Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]
        See Tex. Penal Code Ann. §§ 29.02(a)(2),
29.03(a)(2) (West 2011); see also Tex. Penal Code Ann. § 7.02(a)(2) (West 2011) (law of parties).