

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00260-CR

THE STATE OF TEXAS                                                    STATE

V.

JULIUS VIRGIL HOWARD                                              APPELLEE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## OPINION

----------

## I. Introduction

The State appeals from the trial court's written order granting Appellee Julius Virgil Howard's motion to suppress two orally-recorded statements. The State argues in its first two points that the trial court erred by granting Howard's motion to suppress based on *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), because Howard was not in custody during the interviews, meaning that *Miranda* warnings were not required and that the interviewing officer was

therefore permitted to ignore Howard's purported request for counsel. The State alternatively contends in its third and fourth points that the trial court erred by granting the motion to suppress because Howard did not unambiguously request counsel. We reverse and remand.

## II. Factual and Procedural Background

The trial court conducted an evidentiary hearing on Howard's written motion to suppress during which Arlington Police Detective Corinthia Campbell and Hood County Investigator Robert Young testified. The trial court also viewed a portion of Howard's videotaped polygraph examination.

Detective Campbell testified that she was assigned to investigate an aggravated sexual assault offense for which Howard was the suspect. Detective Campbell arranged to meet with Howard on December 14, 2009, at the Arlington Alliance Advocacy Center, a residential location next door to the Arlington Child Protective Services office. No arrest warrant had been issued; Howard voluntarily appeared at the meeting place, and he was not handcuffed or restrained in any way. Detective Campbell videotaped her interview of Howard.[1] At the end of the interview, Detective Campbell asked whether Howard would take a polygraph examination, and Howard agreed.

Howard then drove himself to the polygrapher's office, and Detective Campbell met him there. Investigator Young, who was interning at the

_____

[1]The admissibility of this videotaped interview is not at issue in this appeal.

2

polygrapher's office in order to become a licensed polygrapher, conducted and videotaped the polygraph examination. Investigator Young testified that the polygrapher's office had a policy of informing interviewees of their *Miranda* rights and that he thus informed Howard of his *Miranda* rights before beginning the polygraph examination. It is during this videotaped polygraph examination that Howard argues (and the trial court found) that he invoked his right to *Miranda* counsel just after Investigator Young informed him of his rights. Investigator Young testified that he believed Howard told him that he had wanted counsel during the earlier interview but wanted to continue with the polygraph examination and that he therefore continued with the polygraph examination.

At the conclusion of the polygraph examination, Howard agreed to speak further with Detective Campbell, and Detective Campbell recorded that interview as well.[2]

Howard argued to the trial court that the videotaped polygraph examination and the second interview by Detective Campbell were taken in violation of his *Miranda* rights because all questioning should have stopped when he invoked his right to counsel during the videotaped polygraph examination. At the conclusion of the hearing, the trial court orally granted Howard's motion to suppress and dictated its findings on the record.

---

[2]The third interview was preserved on an audio recording but was not videotaped.

Because we give the trial court's factual determinations almost total deference,[3] we repeat them here:

Based upon the testimony of Detective Campbell and Mr. Young, the Court's going to find that the Defendant did meet with Detective Campbell at the Alliance for Children office, that he voluntarily met with her. That when he came into the office, he was not under arrest. He's not charged with anything. No restraints or handcuffs were placed on him.

Detective Campbell explained to him that he was allowed to leave at any time. Detective Campbell did not read him his *Miranda* warning, but that he was not in custody. He was not denied any things concerning food, water, bathroom breaks. That he did, in fact, talk with Detective Campbell. That at the end of their conversation, Detective Campbell asked him if he would like to take a polygraph and he stated that he would.

Detective Campbell did, in fact, call the offices of Richard Wood and actually set up the appointment. She was told that the appointment could be taken at 11:30 that same day. That Mr. Howard drove himself to the offices of Wood's polygraph and Detective Campbell also drove to the offices of Richard Wood.

That once he arrived at the offices of Richard Wood, he met Mr. Robert Young. It's the Court's understanding that Mr. Young was a criminal investigator with the Hood County District Attorney's office. And that prior to being a criminal investigator, he was also a Hood County sheriff's detective or employee. He was also a certified police officer.

Mr. Young interviewed Mr. Howard, and during the interview, he read Mr. Howard his *Miranda* rights.[4] . . . [H]aving been informed

---

[3]We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[4]The trial court then listed Howard's *Miranda* rights.

of his rights and understanding, [Mr. Young asked Mr. Howard if he would] knowingly, intelligently and voluntarily waive those rights, and not desiring a lawyer, voluntarily choose to proceed with the polygraph examination. And he was asked, do you agree with all this. Mr. Howard, at that time, says, if I can have a lawyer present. And Mr. Young told him, you have a -- you can have a lawyer present to advise you prior to and during any questioning. Those are your rights. Mr. Howard, at that time, said, that's what I want. Mr. Young continued, those are your rights, do you understand all those. And Mr. Howard said, yeah. And then Mr. Young told him, okay, if you understand those rights, sign right here. In fact, Mr. Howard did sign the papers.

The trial court also dictated its conclusions of law[5] on the record as follows:

> Now, it's the Court's belief that once these *Miranda* warnings were given -- which, from the testimony is the protocol of Richard Woods' office in conjunction with the Arlington Police Department -- once he read those rights and Mr. Howard said that he wanted a lawyer, then the interview should have stopped.
>
> The Court's going to make a finding that Mr. Young, who was an intern at Richard Woods' office, and whose job really was criminal investigator with the Hood County DA's office crimes against children, as a matter of fact, that he should have known that once someone requests a lawyer, that all interviews stop. I don't think there's any excuse to continuing the interview when a law enforcement officer understands the rights of an accused and understands *Miranda* rights and, in fact, gives this person his *Miranda* rights, but then continues to go forward.
>
> As such, the Court's going to grant the motion to suppress this interview and interviews subsequent to that by Detective Campbell because that interview took place after this polygraph exam was taken. So I think that interview would be tainted also.

---

[5]Unlike the trial court's factual findings, we review de novo the trial court's application-of-law-to-fact questions that do not turn on credibility and demeanor. *See Amador*, 221 S.W.3d at 673; *Estrada*, 154 S.W.3d at 607; *Johnson*, 68 S.W.3d at 652–53.

So that's going to be the finding of the Court and it's going to be so ordered.

The trial court's written order on Howard's motion to suppress states in pertinent part that "[a]fter reading the pleadings and hearing the testimony, the Court is of the opinion that the motion should be GRANTED as the statements were a result of a violations [sic] of Miranda v. Arizona, 86 S.Ct. 1602 (1966)." The State filed its notice of appeal with this court the next day.

## III. Discussion

The State argues in its first two points that the trial court erred by granting Howard's motion to suppress because *Miranda* warnings were not required since Howard was never in custody and that the interviewing officer was thus free to continue questioning Howard following his alleged request for counsel. Howard concedes that he was not in custody during any of the videotaped interviews involved in this case and that *Miranda* warnings were therefore not required. Howard also does not contest that an officer need not scrupulously follow a person's request for *Miranda* counsel when that person is not in custody and has been gratuitously informed of his *Miranda* rights.

Because Howard was not in custody during either of the interviews at issue in this appeal, we first address whether Investigator Young violated Howard's rights under *Miranda* by continuing with the polygraph examination after Howard

6

requested counsel.[6]  In that regard, this case is controlled by the court of criminal appeals's opinion in *Estrada v. State*, 313 S.W.3d 274 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 905 (2011).  In that case, the court of criminal appeals first held that Estrada was not in custody.  *Id.* at 294.  Then, addressing Estrada's contention that "the police coerced his confession primarily because the police continued to interrogate [him] after he invoked his *Miranda* rights to counsel and to remain silent after the police had informed him of these rights," *id.* at 295, the court overruled the point and held as follows:

> Even if we were to assume that appellant unambiguously invoked his rights to counsel and to silence during the noncustodial interrogation setting, we do not agree that the police were required to honor these invocations.  We adopt the following discussion from our unpublished decision in *Davis v. State*:
>
>> Because the appellant was not in custody, law enforcement officials had no obligation under *Miranda* to scrupulously honor a request to terminate questioning.  Although *Miranda* warnings were given (unnecessarily), that fact does not change the analysis.  We have recognized that the prosecution cannot impeach a defendant with his post-*Miranda* silence, even if *Miranda* warnings were given prematurely.  This recognition was based on the idea that it is fundamentally unfair to make the implicit promise that silence will carry no penalty and then to break that promise by using the defendant's silence against him at trial.  The scrupulous honoring of rights, however, presents a different situation.  The need to scrupulously honor a defendant's invocation of *Miranda* rights does not arise until created by the pressures of custodial interrogation.  Without those pressures, the police are free to attempt to persuade a reluctant suspect to talk, and

---

[6]Because we give the trial court's factual determinations almost total deference, we assume for purposes of this opinion that Howard did in fact unambiguously request counsel after Investigator Young *Mirandized* him.

7

the immediate termination of the interrogation after the invocation of rights is simply not required.

*Id.* at 296 (footnotes omitted) (quoting *Davis v. State*, No. AP-74393, 2007 WL 1704071, at *5 (Tex. Crim. App. June 13, 2007) (not designated for publication)). In a footnote, the *Estrada* Court further explained its holding as follows:

> We believe that the defendant's remedy in a noncustodial setting where the police continue questioning the defendant after the defendant has unambiguously invoked his right to silence is simply to get up and leave as appellant could have done in this case. We further note that accepting appellant's suggestion that the police should have cut off questioning if appellant invoked his right to silence after gratuitously receiving *Miranda* warnings would deter police from informing a suspect of his rights during noncustodial interrogation. We decline appellant's invitation to put the interrogating officers in this case in a worse position than they would have been in had they provided no *Miranda* warnings at all.

*Id.* at 296 n.26 (citations omitted).

In this case, the parties do not dispute that Howard was not in custody at the time Investigator Young informed him of his *Miranda* rights. That Howard was not in custody is further confirmed by the trial court's above-recited factual findings. *See Stansbury v. California*, 511 U.S. 318, 322–23, 114 S. Ct. 1526, 1528–29 (1994) ("In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (internal quotes omitted)); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) ("A person is in 'custody' only if, under the circumstances, a[n objectively]

8

reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.").

Because Howard was not in custody and was thus not subjected to custodial interrogation, Investigator Young was not required to inform him of his *Miranda* rights. *See Estrada*, 313 S.W.3d at 296; *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009), *cert. denied*, 131 S. Ct. 103 (2010) ("The warnings required by *Miranda* and article 38.22 are intended to safeguard a person's privilege against self-incrimination *during custodial interrogation*." (emphasis added)). Further, even assuming that Howard unambiguously requested counsel after Investigator Young gratuitously informed him of his *Miranda* rights, Investigator Young could have permissibly ignored Howard's request for counsel and proceeded with the polygraph examination.[7] *Estrada*, 313 S.W.3d at 296. The trial court therefore erred by granting Howard's motion to suppress on the ground that Investigator Young should have stopped questioning Howard upon the invocation of the right to counsel. *See id.*

---

[7]The trial court found that Howard requested counsel, but the parties dispute that factual determination. Howard argues that we must defer to the trial court's factual finding, and the State counters that deference is not required because the alleged invocation of the right to counsel is reflected on the videotaped statement, meaning witness credibility is not at issue. However, we need not decide whether Howard requested counsel or whether he did so unambiguously because *Estrada* instructs us that Investigator Young was permitted to ignore an unambiguous request for counsel since Howard was not being subjected to custodial interrogation. *See* 313 S.W.3d at 296.

9

Howard does not contest the foregoing, nor does he argue that *Estrada* is distinguishable. Instead, Howard contends that the trial court's order should be affirmed on a separate theory, that theory being that his statements following his attempt to invoke *Miranda* counsel were not voluntarily made. *See generally Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (per curiam), *cert. denied*, 130 S. Ct. 1015 (2009) ("If the trial court's ruling regarding a motion to suppress is reasonably supported by the record and is correct under any theory of law applicable to the case, the reviewing court must affirm."). Specifically, Howard argues that "the voluntariness of the statements after requesting counsel is in issue" and that "although the trial judge didn't specifically mention voluntariness, it appears that [voluntariness] was the court's actual concern."

A statement may be deemed "involuntary" under three different theories: (1) failure to comply with code of criminal procedure article 38.22 (the Texas confession statute); (2) failure to comply with the dictates of *Miranda*; or (3) it was taken in violation of due process or due course of law because the statement was not freely given due to coercion, force, or improper influence. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996); *Moore v. State*, 233 S.W.3d 32, 44 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Miller v. State*, 196 S.W.3d 256, 266 (Tex. App.—Fort Worth 2006, pet. ref'd) (per curiam) (mem. op.). We addressed the *Miranda* ground above, and we note that article 38.22 likewise applies only to custodial interrogations. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005); *Gardner*, 306 S.W.3d at 294. Thus, for us to affirm the trial

court's ruling on the ground that Howard's statements were involuntarily made, the record must reasonably support the conclusion that Howard's statements were not freely given due to coercion, force, or improper influence. *See Wolfe*, 917 S.W.2d at 282 ("In contrast [to *Miranda* and article 38.22], due process involuntariness claims do not necessarily require that the interrogation be custodial. But in the absence of custody, due process is violated only by confessions that are not in fact freely given rather than by mere noncompliance with prophylactic rules." (citation omitted)).

To determine the voluntariness of Howard's statements, we examine the totality of the surrounding circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 1128 (2008); *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997). A confession is involuntary if circumstances show that the defendant's will was "overborne" by police coercion. *Creager*, 952 S.W.2d at 856. In other words, a statement is involuntary if the record reflects "official, coercive conduct of such a nature" that any statement obtained thereby is "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

Given these considerations, we cannot say that the record reasonably supports a determination that Howard's statements were made involuntarily. The trial court's findings reflect that Howard voluntarily met with Detective Campbell at the Alliance for Children office; was not under arrest, charged with any crime,

11

handcuffed, or otherwise restrained; was informed that he was free to leave at any time; was not denied necessities such as food, water, or restroom breaks; voluntarily agreed to take the polygraph examination and drove himself to the polygraph office; met with Investigator Young, who informed him of his *Miranda* rights; asked questions of Investigator Young concerning his *Miranda* rights; signed the waiver form; and answered Investigator Young's questions. The trial court did find that Howard invoked his right to counsel, but nothing within the trial court's findings or the evidentiary record suggests that Howard was subjected to the type of coercive police activity that could render his statements involuntary. *See Estrada*, 313 S.W.3d at 297 (holding interrogation techniques employed, which were much more intense than those in this case, were "not the type of brutal 'third-degree' techniques" that would render the confession involuntary under the Due Process Clause). Thus, the trial court's ruling cannot be affirmed on this involuntariness ground, and we accordingly sustain the State's first and second points. We need not decide the State's third or fourth points. *See* Tex. R. App. P. 47.1.

12

## IV. Conclusion

Having sustained the State's first and second points and having not reached the State's third or fourth points, we reverse the trial court's order and remand this case for further proceedings consistent with this opinion.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

PUBLISH

DELIVERED:  August 16, 2012